UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

_____

Nº 11-CV-03502 (JFB)
_____

CHRISTOPHER JOSEY,

Petitioner,

VERSUS

D. ROCK, SUPERINTENDENT OF THE UPSTATE CORRECTIONAL FACILITY.

Respondent.

_____

**MEMORANDUM AND ORDER**
May 3, 2012
_____

Joseph F. Bianco, District Judge.

Christopher Josey (hereinafter "petitioner" or "Josey") petitions this Court for a writ of habeas corpus, pursuant to 28 U.S.C. § 2254, challenging his conviction in the County Court, Nassau County, State of New York. Petitioner was convicted of six counts of robbery in the first degree (New York Penal Law § 160.15) on June 11, 2007, following a non-jury trial. Petitioner was sentenced to concurrent, determinate terms of imprisonment of fourteen years, with five years' of post-release supervision on each charge. In the instant petition, petitioner challenges his conviction, claiming his constitutional rights were violated because: (1) it was error for the trial court not to "consider" defendant's request for a circumstantial evidence charge; (2) the "copy of the copy" of the surveillance video of the bank robbery should not have been accepted into evidence; and (3) the evidence was legally insufficient, and thus, the verdict was against the weight of the evidence. For the reasons set forth below, the petition is denied in its entirety.

I.   BACKGROUND AND PROCEDURAL HISTORY

A.   Background

The Court has adduced the following facts from the instant petition and underlying record.

1.   The Robbery

On July 23, 2005, at around 9:05 a.m., three masked men robbed Bethpage Federal Credit Union.[1]  (T. 18-19.) According to the police report, at approximately 8:30 a.m. on July 23, 2005, Cania Caraballo, ("Caraballo"), the branch manager of the Bethpage Federal Credit Union, arrived to open the bank and prepare it for the day's business. (T. 229-30.)[2] Also arriving at approximately the same time were bank tellers Jennifer Paul ("Paul") and Shannon Rice ("Rice") and ATM and member services representative George Herrera ("Herrera"). (T. 82, 91, 179-81, 214-215.) Each teller went to his or her respective stations. (T. 82, 179-81, 214-15, 230-31, 275-77, 279.)

Meanwhile, outside the bank, credit union member Elsia Mosley ("Mosley") drove up in the car with her mother. (T. 174-75.) Mosley customarily tried to park her vehicle directly in front of the credit union so that she could quickly enter and exit after completing her banking. (T. 175-76.) At approximately 9:05 a.m., Mosley noticed a dark Nissan in her usual parking spot in front of the credit union. (T. 174-76.)[3]  As Mosley exited from her car to walk to the credit union, she noticed three men, each of whom was wearing what appeared to be either ski masks or "doo rags" over their faces, get out of the Nissan and run into the bank. (T. 174-77.)

Two masked African American men ran into the bank, vaulted over the tellers' counter, and pointed their respective guns at Rice and Paul. (T. 182-83, 215-17, 231-34.) One gunman, who stood next to Paul, demanded that Paul get down on the floor and stole $13,004.92 from Paul's cash drawer. (T. 215-216.)  The other gunman, who stood next to Rice, produced a bag, demanded that Rice "give me the money now," and took $9,506 from Rice's cash drawer. (T. 183-84, 191.)

A third masked African American man, who was between 5'5" and 5'6" tall and armed with a gun, also entered the bank. (T. 232.) Using scientific analysis, discussed *infra*, the third man was later determined to be petitioner.  (T. 433) Like the other robbers, petitioner's face was covered with something "like a 'doo rag.'" (T-232-33, 277, 281.) While at least one of the other perpetrators wore gloves, petitioner used a cloth to hold his gun. (T. 233, 237, 279.)

While his two partners ran to the tellers' stations, petitioner approached Caraballo and Herrera, told them that they were being robbed and instructed them to get behind the counter and do as they were told. (T. 232-33.) Petitioner also told Herrera and Caraballo that he would shoot them if they looked at him. (T. 281.) The other two gunmen then threatened Rice and Paul and announced to everyone in the bank that if they wished to see their families and children, they needed to cooperate. (T. 235.) Upon hearing the gunmen's threats, Caraballo screamed to the tellers to give the robbers everything. (T. 235-236.) Petitioner then

---

[1] The following facts were taken from the transcript of the trial ("T.") that took place from May 21, 2007 to June 5, 2007.  The facts were also taken from the transcript of the sentencing ("S.") that took place on October 14, 2009.
[2] Bethpage Federal Credit Union is located at 170 Fulton Avenue in Hempstead, New York.
[3] Mosley testified that she would normally park in the front of the bank "where you are not suppose to park," if she had her mother in the car. (T. 175-76.)

2

yelled to the other gunmen, "Time's up, let's go!" (T. 185, 235.) At that point, the two other gunmen took the cash they had stolen and jumped back over the counter. (T. 185, 217.) Together, the three gunmen, including petitioner, ran out of the credit union and into the car that was parked in front of the bank. (T. 185-86, 283.)

2. After the Robbery

Mosley walked towards the bank while the three masked men she had witnessed enter the credit union were still inside. (T. 175-77.) As Mosley approached the bank's door, the same three masked men ran out of the bank and got into a Nissan car that was in front of the credit union. (T. 174-77.) Believing that something was amiss, Mosley made a point to remember the license plate of the Nissan, and subsequently reported it as DER 2567. (T. 177-78.)

Immediately after the robbers had fled, Herrera went to lock the front doors. (T. 286.) As he approached the front of the bank, he saw the three gunmen get into a car that was parked in front of the credit union and drive off. (T. 283-87.)

After locking the doors, Herrera returned to his desk and noticed a cloth sitting on top of the ATM envelopes he had been processing before the robbery. (T. 289-90.) He realized the cloth had not been there before the robbery. (T, 284-91.) He later identified the cloth at trial as the cloth that petitioner had dropped during the robbery. (T. 284-91.) Caraballo also noticed the cloth and remembered that it had not been there before the robbery. (T. 243.)[4]

Caraballo called the police and they arrived on the scene approximately ten minutes later. (T. 222, 244.) Herrera informed a member of the Hempstead Police Department about the cloth left behind on the keyboard by petitioner. Detective James Hutchinson of the Nassau County Crime Scene Unit, who also responded to the scene, then sealed the black nylon bandana in a bag, and later placed it in an evidence locker at police headquarters. (T. 29, 43-47, 343.) Subsequently, as explained by Forensic Geneticist Kirsten Rosmarion-Tabert ("Rosmarion-Tabert"), DNA testing performed at the Nassau County Medical Examiner's Office on the cloth recovered from the credit union showed that the DNA found on the cloth matched the DNA from a sample taken from petitioner's cheek by Detective Paul Pich on April 24, 2007.[5] (T. 365-69; 370-72, 379-80, 417, 421, 426-35.)

At about 9:07 a.m. on the morning of the credit union robbery, Detective Troy Wright of the Hempstead Police Department was notified of the robbery. (T. 126.) He went to the bank's parking lot, and drove toward the south end of Hempstead. (T. 126.) He turned onto the street that was several blocks away from the credit union, and saw, parked on the street, a gray Nissan with a partial license plate number "Robert 2567." (T. 126-129.) Mosley later viewed a photograph

---

[4] Caraballo testified that she observed something different about the customer service desk. (T. 243.) There was a type of black rag or doo rag on Herrera's desk (T. 243).

[5] The testimony calls it a "buccal" which means a DNA sample taken from inside the cheek. (T. 366, 433.) Rosmarion-Tabert also testified that the Forensic Genetics Department has a restricted access laboratory, uses restricted controls throughout the DNA analysis procedure, and ensures a second reviewer goes through the results to make sure the right conclusions are reached. (T. 374.)

3

of the Nissan that Officer Wright had found in Hempstead shortly after the robbery occurred. (T. 129.) Mosley stated that the Nissan looked like the car she had seen in front of the credit union. (T. 129.) According to Mosley, this was the same car from which three men had exited, went into the bank, and later drove away in. (T. 179.)

### 3. Surveillance Video

Anthony Edelman ("Edelman") was the head of security for the Bethpage Federal Credit Union and was responsible for the credit union's security system. (T. 75.) He also maintained and installed the systems. (T. 75, 79-80.) At the time of the robbery, the credit union had a nine-camera surveillance system that continuously recorded images from all cameras on three-second loops from one camera to another. (T. 76-77.)[6] The images obtained were stored on a hard drive at the credit union and were erased after ninety days. (T. 77-78.)

The hard drive containing the stored images could not be removed from the system on which it was operating unless a digital video recorder ("DVR") was installed. (T. 80, 110.) A DVR was not available during the ninety-day period following the robbery and the original was erased within ninety days of the incident. (T. 78, 101, 110-11.) Edelman made a copy from the copy of the downloaded images from the secure network and provided the copy to the Nassau County District Attorney's Office. (T. 78-79; People's Trial Exhibit 16.) Edelman testified that the original copy on the hard drive was erased after ninety days, but he had the IT department burn a copy of the video that was downloaded to the secure network. (T. 78.)[7] Edelman viewed the original recorded images of the robbery on the day the images were recorded and compared it to the copy that was being introduced into evidence and found that the copy was a "fair and accurate copy of the original hard drive recording," with the exception of a twelve-minute discrepancy in the time depicted on the video. (T. 89-97, 102-04, 110-11.) Additionally, the video was shown to Herrera, Caraballo, Paul, and Rice who all testified that the video accurately depicted the events of the robbery. (T. 191-93, 220-21, 238-42, 284-89, 337.)[8]

---

[6] The cameras were situated in different locations throughout the credit union, and captured images from various areas, including the tellers' stations and the credit union vestibule. (T. 96.)

[7] The copy that was admitted into evidence was a duplicate copy of the original. (T. 76-78.)

[8] The video depicted Rice's teller station, cash drawer, and Rice conducting a transaction with a credit union member on the date of the robbery (T. 190-91). Moreover, the video accurately showed the following activities: (1) one of the robbers jumping over Rice's counter and threatening her with a gun; (2) Rice placing cash from her drawer into the robber's bag; (3) the robber that was threatening Rice speaking with the robber who was at Paul's counter; and (4) the robbers leaving the credit union and getting into a car. (T. 191-93.) For her part, Paul recognized herself, as well as one of the robbers jumping over her counter and later leaving the credit union, on People's Trial Exhibit 16. People's Trial Exhibit 16 is the "copy of the copy" video, which showed the three men robbing Credit Union Bank. (T. 219-21.) Caraballo explained that People's Trial Exhibit 16 showed her signing onto her computer, and George Herrera working with the ATM envelopes. (T. 281) Moreover, she stated that the video also showed (1) the robbers coming into the credit union; (2) a robber ordering her and Herrera to move around a counter; and (3) a robber threatening her and Herrera with a gun. (T. 238-42.) Herrera explained that People's Trial Exhibit 16 showed: (1) him opening envelopes and counting cash before the robbery; (2) a robber threatening him with a cloth-covered firearm; (3) the cloth that a robber had dropped during the

4. Fingerprints

On July 24, 2005, Detective Laurel Tobias of the Nassau County Police Department Crime Scene Unit examined the Nissan found by Detective Wright. (T. 136.) The detective located prints on the rear passenger-side window; he then photographed and "lifted" those prints. (T. 137-42.) On May 16, 2007, Detective Manuel Nash of the Nassau County Robbery squad witnessed Detective Hutchinson take an inked impression of petitioner's palm prints. (T. 348-49.) The prints recovered from the Nissan and the prints obtained from petitioner were both forwarded to the Latent Fingerprint Section of the Forensic Evidence Bureau for analysis. (T. 159, 349, 353, 355-56.)

On May 17, 2007, Detective Barbara Stemmle of the Nassau County Police Department's Latent Fingerprint Section compared petitioner's prints to the prints recovered from the Nissan, and the prints matched. (T. 355-59.) Moreover, at trial, Detective Stemmle demonstrated in what position an individual's hands would have to be in order to leave the print pattern recovered from the rear passenger-side window of the car: The fingers of both hands would have to be pointed upwards. (T. 358-59.) As the video taken by the credit union's ATM camera suggested, petitioner had put his hands on the Nissan getaway car in such a manner. (T. 356-60.)

5. Petitioner's Arrest, Trial and Sentencing

On September 20, 2006, Detective John Comisky of the Nassau County Robbery Squad supervised petitioner's arrest. (T. 397-99.) Petitioner was indicted for six counts of robbery in the first degree (New York Penal Law § 160.15) in County Court, Nassau County. On May 21, 2007, the petitioner appeared before Judge Jerald S. Carter. The petitioner's attorney informed the court of the petitioner's decision to waive his right to a jury trial. Judge Carter asked the petitioner if he understood the magnitude of his decision to waive his right to a jury trial. (T.3.) Petitioner's attorney said he told the petitioner on "several occasions," both in the jail and in court, the consequences of a non-jury trial. (T. 4.)[9] Following the non-jury trial, petitioner was convicted of all the crimes for which he had been indicted. Petitioner was sentenced on October 14, 2009 to a determinate period of incarceration of fourteen years, and upon his release subject to five years' post-release supervision. (S. 6.)[10] The court also imposed a mandatory surcharge of two hundred fifty dollars, crime victims' assessment fee of twenty dollars, and a DNA fee of fifty dollars. (S. 6.) There was also restitution imposed in the amount of $22,494.35. (S. 6-7.) The

---

robbery; (4) Herrera going to lock the doors; and (5) the robbers getting into a getaway vehicle. (T. 284-89.)

[9] Although it was a non-jury trial, Petitioner argues that the court did not give a circumstantial evidence charge. However, the transcript does not show the petitioner's counsel asked for such a charge.

[10] Before the court issued its sentence, the prosecution noted that the petitioner had a criminal career spanning over three decades and asked for the maximum sentence allowed by law. (S. 3.) The petitioner chose not to speak at the sentencing, but his attorney noted that the defendant had an alcohol problem and has been voluntarily obtaining treatment. (S. 3.) The petitioner's attorney also noted that petitioner never fled the jurisdiction and cooperated with police during the investigation. The petitioner's attorney then asked for a lesser sentence than the prosecution requested. (S. 5.)

5

court informed the petitioner that the restitution was going to be collected via civil judgment and attached to that commitment was Bethpage Federal Credit Union, who was paid via insurance deductible. (S.7.)

### B. Appeals

Petitioner appealed the Supreme Court's decision to the Appellate Division, Second Department. In a decision dated March 15, 2011, the Appellate Division affirmed the Supreme Court's decision convicting petitioner after a non-jury trial of robbery in the first degree. *See People v. Josey*, 82 A.D.3d 1009, 918 N.Y.S. 593 (App. Div. 2011). The Appellate Division stated that "[w]hile the People's case was based entirely on circumstantial evidence, viewing the evidence in the light most favorable to the prosecution, and giving it the benefit of every reasonable inference to be drawn therefrom, we find that it was legally sufficient to establish the defendant's guilt beyond a reasonable doubt." *Id.* (internal citations omitted). The Appellate Division further stated that "[w]e are satisfied that the verdict of guilt was not against the weight of evidence." *Id*. Moreover, the Appellate Division held that "[t]he defendant's contentions relating to the chain of custody of a copy of a video recording that was admitted into evidence, and defense counsel's ability to compare that video recording to the original recording, are unpreserved for appellate review and, in any event, without merit." *Id*. The Appellate Division found the petitioner's remaining claims to be without merit.

On March 24, 2011, the petitioner's attorney wrote a letter to Chief Judge Lipmann of the New York Court of Appeals seeking leave to appeal the Appellate Division's March 15, 2011 decision. (Resp. Ex. 4.) The petitioner's attorney argued that the court erred in failing to instruct itself on a circumstantial evidence charge. (Resp. Ex. 4.) The petitioner argued that by "denying appellant's request to charge, [the petitioner] cannot be sure that the court applied the right standards in deciding what inferences to be drawn by the circumstantial evidence before it." (Resp. Ex. 4.) The petitioner's attorney also argued in his letter that "[t]he problem of the inferences to be drawn are further exacerbated because the circumstantial evidence was not created at the scene of the crime but b[r]ought to it without any evidence or even suggestion of when and how the rag and prints were produced. . . ." (Resp. Ex. 4.)

In a letter to Judge Pigott of the Court of Appeals dated April 27, 2011, the respondent wrote a letter in opposition to petitioner's application for permission to appeal to the Court of Appeals. (Resp. Ex. 5.) The respondent argued that this was a bench trial and not a jury trial, so the charge was not necessary. (Resp. Ex. 5.) Also, the respondent noted that petitioner's counsel did not ask the judge to "utter a charge on circumstantial evidence." (Resp. Ex. 5.) Thus, respondent argued that the trial court did not refuse petitioner's request, but that the petitioner did not raise the issue during trial. On May 23, 2011, the Court of Appeals denied petitioner's application for leave to appeal. *People v. Josey*, 16 N.Y.3d 896, 926 N.Y.S.2d 32 (Table) (2011). Petitioner did not seek certiorari from the United States Supreme Court.

6

### C. The Instant Petition

Josey filed the Petition for Writ of Habeas Corpus on July 14, 2011. Respondent filed his response on December 9, 2011. On January 3, 2012, the petitioner submitted his reply. The Court has fully considered the submissions and arguments of the parties.

### II. STANDARD OF REVIEW

To determine whether petitioner is entitled to a writ of habeas corpus, a federal court must apply the standard of review set forth in 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act ("AEDPA"), which provides, in relevant part:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented by the State court proceedings.

28 U.S.C. § 2554. "Clearly established Federal law" is comprised of "the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." *Green v. Travis*, 414 F.3d 288, 296 (2d Cir. 2005) (quoting *Williams v. Taylor*, 529 U.S. 362, 412, 120 S.Ct. 1495, 146 L. Ed. 2d 389 (2000)).

A decision is "contrary to" clearly established federal law, as determined by the Supreme Court, "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." *Williams*, 529 U.S. at 413. A decision is an "unreasonable application" of clearly established federal law if a state court "identifies the correct governing legal principles from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of [a] prisoner's case." *Id.*

AEDPA establishes a deferential standard of review: "a federal habeas court may not issue the writ simply because the court concludes in its independent judgment that the relevant state-court decisions applied clearly established federal law erroneously or incorrectly. Rather, that application must be unreasonable." *Gilchrist v. O'Keefe*, 260 F.3d 87, 93 (2d Cir. 2001) (quoting *Williams*, 529 U.S. at 411). The Second Circuit added that, while "[s]ome increment of incorrectness beyond error is required . . . the increment need not be great; otherwise, habeas relief would be limited to state court decisions so far off the mark as to suggest judicial incompetence." *Id.* (quoting *Francis S. v. Stone*, 221 F.3d 100, 111 (2d Cir. 2000)). Finally, "if the federal claim was not adjudicated on the merits, 'AEDPA

7

deference is not required, and conclusions of law and mixed feelings of fact and conclusions of law are reviewed *de novo*.'" *Dolphy v. Mantello*, 552 F.3d 236, 238 (2d Cir. 2009) (quoting *Spears v. Greiner*, 459 F.3d 200, 203 (2d Cir. 2006)).

### III. DISCUSSION

For the reasons discussed below, this Court denies petitioner habeas relief. Petitioner's claims that the trial court improperly admitted a "copy of a copy" of the video and that there was insufficient evidence to convict petitioner are procedurally barred. However, in an abundance of caution, the Court has reviewed all of petitioner's claims on the merits and finds that there is no basis to grant petitioner habeas relief.

### A. Procedural Bar

#### 1. Independent and Adequate State Law Grounds

A petitioner's federal claims may be procedurally barred from habeas corpus review if they were decided at the state level on "independent and adequate" state procedural grounds. *Coleman v. Thompson*, 501 U.S. 729-33, 111 S. Ct. 2546, 115 L. Ed. 2d 640 (1991). To be independent, the "state court must actually have relied on the procedural bar as an independent basis for its disposition of the case," *Harris v. Reed*, 489 U.S. 255, 261–62 (1989), by "clearly and expressly stat[ing] that its judgment rests on a state procedural bar." *Id.* at 263 (internal quotation marks omitted). The procedural rule at issue is adequate if it is "firmly established and regularly followed by the state in question." *Garcia v. Lewis*, 188 F.3d 71, 77 (2d Cir. 1999) (internal quotation marks omitted). However, there is a "small category" of "exceptional cases in which [an] exorbitant application of a generally sound [procedural] rule renders the state ground inadequate to stop consideration of a federal question." *Lee v. Kemna*, 534 U.S. 362, 376, 381, 122 S. Ct. 877, 151 L. Ed. 2d 820 (2002). Nevertheless, "principles of comity . . . counsel that a federal court that deems a state procedural rule inadequate should not reach that conclusion lightly or without clear support in state law." *Garcia*, 188 F.3d at 77 (quotation marks omitted).

If a claim is procedurally barred, a federal habeas court may not review the claim on the merits unless the petitioner can demonstrate both cause for the default and prejudice resulting therefrom, or if he can demonstrate that the failure to consider the claim will result in a miscarriage of justice. *Coleman*, 501 U.S. at 750. Petitioner may demonstrate cause by showing one of the following: "(1) the factual or legal basis for a petitioner's claim was not reasonably available to counsel, (2) some interference by state officials made compliance with the procedural rule impracticable, or (3) the procedural default was the result of ineffective assistance of counsel." *McLeod v. Graham*, No. 10 Civ. 3778 (BMC), 2010 WL 5125317, (E.D.N.Y. Dec. 9, 2010) (citing *Bossett v. Walker*, 41 F.3d 825, 829 (2d Cir. 1994)). Such prejudice can be demonstrated by showing that the error "worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Torres v. Senkowski*, 316 F.3d 147, 152 (2d Cir. 2003). A miscarriage of justice is demonstrated in extraordinary cases, such as where a constitutional violation results

in the conviction of an individual who is actually innocent. *Murray v. Carrier*, 477 U.S. 478, 496 (1986). To overcome a procedural default based on miscarriage of justice, petitioner must demonstrate that "in light of new evidence, it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt" and would require "new reliable evidence . . . that was not presented at trial." *House v. Bell*, 547 U.S. 518, 536–37, 126 S. Ct. 2064, 165 L. Ed. 2d 1 (2006).

2. Application

a.      Admissibility of the Video

Petitioner claims that the "copy of the copy" video should not have been admitted into evidence because "the Defense lawyer and his client did not have an opportunity to examine the original" and "there was no chain of custody established with this copied copy of the original recording." (Pet. at 9.) Petitioner appears to also be arguing that the prosecution did not lay a proper foundation for admission of the video into evidence. (*Id.*) Respondent argues that this claim is procedurally barred because this issue was decided on an independent and adequate state ground. (Resp. Br. at 18.) For the reasons set forth *infra*, petitioner's claims that the video should not have been admitted into evidence because there was no chain of custody and because the defense counsel did not have an opportunity to examine the original are procedurally barred.

Under New York law, a defendant must raise his objection before the trial court in order to preserve that issue for state appellate review. *See* N.Y. C.P.L. § 470.02(2); *People v. Gonzalez*, 55 N.Y.2d 720, 722 (1981), *People v. West*, 56 N.Y.2d 662, 663 (1982). New York's preservation doctrine is firmly established and regularly followed. *See Garvey v. Duncan*, 485 F.3d 709, 715-16 (2d Cir. 2007); *Glenn v. Bartlett*, 98 F.3d 721, 724-25 (2d Cir. 1996) (finding that failure to preserve issue for appeal was adequate and independent state law ground precluding federal habeas review and further noting that "federal habeas review is foreclosed when a state court has expressly relied on a procedural default as an independent and adequate ground, even where the state court has also ruled in the alternative on the merits of the federal claim" (quoting *Velasquez v. Leonardo*, 898 F.2d 7, 9 (2d Cir. 1990))); *see also Fernandez v. Leonardo*, 931 F.2d 214, 215-16 (2d Cir. 1991).

At petitioner's trial, when the prosecution sought to introduce the video through the testimony of Anthony Edelman, petitioner's counsel objected and contended that the video was inadmissible because a proper foundation was not established. (T. 81-86.) On appeal, petitioner argued, as he does in the instant petition, that the video should not have been admitted because no foundation was established, no chain of custody was established and because the defense counsel did not have an opportunity to review the original video. (Def.-App. Br. at 23-27.) As discussed *supra*, the Appellate Division ruled that "[d]efendant's contentions relating to the chain of custody of a copy of a video recording that was admitted into evidence, and defense counsel's ability to compare that video recording to the original recording, are unpreserved for appellate review and, in any event, without merit." *People v. Josey*, 82

9

A.D.3d at 1009).[11] Thus, because the Appellate Division relied on the preservation doctrine and held that the petitioner's claim pertaining to the chain of custody and defense counsel's ability to view the video were unpreserved, the Appellate Division's dismissal of these claims was based on an independent and adequate state law ground.[12]

Even if an independent and adequate state ground bars the petitioner's claim, a claim may still be permissible for review in federal court if the denial of habeas relief would result in a miscarriage of justice. *Coleman*, 501 U.S. at 750. Petitioner may demonstrate cause by showing one of the following: "(1) the factual or legal basis for a petitioner's claim was not reasonably available to counsel, (2) some interference by state officials made compliance with the procedural rule impracticable, or (3) the procedural default was the result of ineffective assistance of counsel." *See id.* Petitioner has not alleged nor proven any of these factors in his brief nor has petitioner "shown in light of new evidence, it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." *See id.* Thus, the Court finds that portions of the claim regarding the admissibility of the videotape – namely, the chain of custody and inability to review the original – are procedurally barred from habeas relief.

b. Sufficiency of the Evidence

Petitioner argues that the verdict was against the weight of the evidence and legally insufficient. (Pet. at 12.) Respondent contends that petitioner's claim regarding the sufficiency of the evidence is barred by independent and adequate state law grounds. (Resp. at 27.) For the reasons set forth *infra*, this Court finds that petitioner's sufficiency of the evidence argument is barred because it was previously decided on an independent and adequate state law ground.

At trial, petitioner failed to assert his claim that the evidence was against the weight of the evidence, and pursuant to New York Law, he was required to do so in order to preserve an objection on appeal. N.Y.C.P.L. § 470.05 (2). On appeal, the Appellate Court stated that "[d]efendant's contention that the circumstantial evidence presented at trial was legally insufficient to support his conviction of robbery in the first degree is unpreserved for appellate review." *Josey*, 82 A.D.3d at 1009. Therefore, the claim is procedurally barred from review because the Appellate Division relied on

---

[11] Respondent argues that all of petitioners' claims regarding the video are procedurally barred. (Resp. Br. at 18.) However, the Appellate Division's ruling did not address petitioner's argument regarding improper foundation. Accordingly, to the extent petitioner has made a claim that habeas relief should be granted because there was a lack of foundation for the video, that argument is not procedurally barred. However, as discussed *infra*, the argument is without merit.

[12] Furthermore, the Appellate Division's reliance on the preservation doctrine was not exorbitant in this case. As noted above, in *Lee v. Kemna*, the Supreme Court concluded that there is a limited category of "exceptional cases" in which the state appellate court applied a firmly established and regularly followed procedural ground in an "exorbitant" manner so that the application of the ground was inadequate, and a federal court was therefore not barred from reviewing that claim on the merits in a habeas appeal. 534 U.S. at 376. Having considered the factors set forth in *Cotto v. Herbert*, 331 F.3d 217, 240 (2d Cir. 2003), in connection with this exception, the Court concludes that the Appellate Division did not apply the preservation doctrine in an exorbitant manner.

10

the preservation doctrine, and thus already decided the issue on an independent and adequate state procedural ground. As stated *supra*, New York's preservation doctrine is firmly established and regularly followed. *See Garvey*, 485 F.3d at 715-16; *Glenn*, 98 F.3d at 724-25.[13]

Moreover, petitioner has not demonstrated that a failure to consider the claim will result in a miscarriage of justice. *See Murray v. Carrier*, 477 U.S. 478 at 496. Thus, petitioner's claim is procedurally barred from review by this Court.

Although the Court has determined that certain arguments by petitioner regarding the admissibility of the video and the claim regarding the sufficiency of the evidence are procedurally barred from review, in an abundance of caution, the Court has analyzed the merits of all of petitioner's claims and finds them to be without merit.

### B. Merits

#### 1. Sufficiency of the Evidence

Petitioner claims that the evidence presented at trial was insufficient and that the verdict was against the weight of the evidence. For the reasons set forth below, the Court finds that petitioner's claim is without merit.

#### a. Applicable Law

A "weight of the evidence" claim is based on state law. *See Correa v. Duncan*, 172 F. Supp. 2d 378, 381 (E.D.N.Y. 2001) ("A 'weight of the evidence' argument is a pure state law claim grounded in New York Criminal Procedure Law § 470.15(5), whereas a legal sufficiency claim is based on federal due process principles."). The Court cannot consider a purely state law claim on federal habeas review. *See Lewis v. Jeffers*, 497 U.S. 764, 780 (1990) ("[F]ederal habeas corpus relief does not lie for errors of state law . . ."). Therefore, to the extent petitioner raises a weight of the evidence claim, the Court cannot review it.

However, petitioner's claim that the evidence was insufficient to support his conviction does present a question of federal law. *See Einaugler v. Supreme Court of the State of N.Y.*, 109 F.3d 836, 839 (2d Cir. 1997) (stating that the Fourteenth Amendment requires "sufficient evidence for a jury to find that the prosecution proved the substantive elements of the crime as defined by state law." (citing *Jackson v. Virginia*, 443 U.S. 307, 318-19, (1979))).

The law governing habeas relief from a state conviction based on insufficiency of the evidence is well established. A petitioner "bears a very heavy burden" when challenging the legal sufficiency of the evidence in an application for a writ of habeas corpus. *Id.* at 840. A criminal conviction in state court will not be reversed if, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."

---

[13] In addition, the Appellate Division's reliance on the preservation doctrine was also not exorbitant in this case. *See Lee*, 534 U.S. at 376. Having considered the factors set forth in *Cotto v. Herbert*, 331 F.3d 217, 240 (2d Cir. 2003), in connection with this exception, the Court concludes that the Appellate Division did not apply the preservation doctrine in an exorbitant manner.

11

*Jackson*, 443 U.S. at 319, (emphasis in original); *see also Policano v. Herbert*, 115-16 (2d Cir. 2007) (stating that "[i]n a challenge to a state criminal conviction brought under 28 U.S.C. § 2254 . . . the applicant is entitled to habeas corpus relief if it is found that upon the record evidence adduced at the trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt" (quoting *Jackson*, 443 U.S. at 324)); *Ponnapula v. Spitzer*, 297 F.3d 172, 179 (2d Cir. 2002) ("[W]e review the evidence in the light most favorable to the State and the applicant is entitled to habeas corpus relief only if no rational trier of fact could find proof of guilt beyond a reasonable doubt based on the evidence adduced at trial."). A criminal conviction will stand so long as "a reasonable mind 'might fairly conclude guilt beyond a reasonable doubt.'" *United States v. Strauss*, 999 F.2d 692, 696 (2d Cir. 1993) (quoting *United States v. Mariani*, 725 F.2d 862, 865 (2d Cir. 1984) (internal quotation omitted)). Even when "faced with a record of historical facts that supports conflicting inferences [a court] must presume-even if it does not affirmatively appear in the record – that the trier of fact resolves any such conflicts in favor of the prosecution, and must defer to that resolution." *Wheel v. Robinson*, 34 F.3d 60, 66 (2d Cir. 1994) (quoting *Jackson*, 443 U.S. at 326).

A habeas petitioner cannot prevail on a claim of legally insufficient evidence unless he can show that, viewing the evidence in the light most favorable to the prosecution, "no rational trier of fact could have found proof of guilt beyond a reasonable doubt." *Flowers v. Fisher*, 296 F. App'x 208, 210 (2d Cir. 2008) (quoting *Jackson*, 433 U.S. at 324). When considering the sufficiency of the evidence of a state conviction, "[a] federal court must look to state law to determine the elements of the crime." *Quartararo v. Hanslmaier*, 186 F.3d 91, 97 (2d Cir. 1999).

b. Application

For the reasons set forth below, the Court concludes that the evidence at trial was legally sufficient to convict petitioner of the charged crime beyond a reasonable doubt.

Petitioner argues that the evidence was legally insufficient to support his conviction of robbery in the first degree because the only evidence pointing to petitioner's guilt was the DNA found on the black cloth and the palm print on the exterior window of the getaway car. (Pet. at 12.) Besides the testimony of the prosecution's experts, the petitioner argues there is no way of establishing when or how the DNA and palm prints were made. (*Id*.) Therefore, the petitioner argues the evidence convicting him was insufficient. (*Id*.)

Respondent rebuts petitioner's claim by pointing to witness George Herrera who described one of the robbers as a 5'5" African American male, matching the description of the petitioner, who was holding his gun with a piece of cloth. (T. 398.) The 5'5" robber that Mr. Herrera had witnessed robbed the bank and dropped a cloth on the desk that both tellers testified had not been there before the robbery. (T. 243; T. 284-291.) The DNA was taken into testing and petitioner's DNA was found on the cloth through forensic analysis. (T. 39, 43-47.)[14] Additionally, the video taken by

---

[14] Detective Hutchinson testified that the black bandana with the petitioner's DNA was

12

the credit union's ATM camera indicates that the position of petitioner's hand on the Nissan getaway car matches the position of the fingerprints that were found on the vehicle. (People's Trial Ex. 16 v.3)

Under the standard enunciated in *Jackson v. Virginia*, namely whether – "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt," – this Court finds the evidence taken together is legally sufficient and could have led a rational jury to conclude beyond a reasonable doubt that petitioner committed robbery in the first degree. There were five witnesses, Elisa Mosley, Cania Caraballo, Shannon Rice, Jennifer Paul, and George Herrera, who testified to the physical description of the petitioner. Moreover, a forensic scientist testified that she found that petitioner's DNA matched the DNA found on the cloth dropped by one of the robbers, and the palm print lifted from the getaway vehicle matched that of petitioner. (T. 426-35, 359.)[15] Although petitioner emphasizes the lack of physical evidence connecting him to the crime, "a conviction may be based upon circumstantial evidence and inferences based upon the evidence." *United States v. Strauss*, 999 F.2d at 696 (citations omitted). The circumstantial evidence in this case overwhelmingly points to petitioner's participation in the crime. The DNA analysis taken from the scene of the robbery and the multiple witnesses who testified under oath to the matching description of the petitioner rebut petitioner's claim that the evidence was legally insufficient. Therefore, all the evidence presented at trial could have led a rational trier of fact to find the petitioner guilty of robbery in the first degree.

In sum, the Court concludes that the evidence was legally sufficient to convict petitioner beyond a reasonable doubt on the charged crime of robbery in the first degree.

### 2. Failure to Give a Circumstantial Evidence Charge

Petitioner argues that he is entitled to habeas relief because the trial court did not give a circumstantial evidence charge. (Pet. at 7.) For the reasons discuss *infra*, this Court disagrees.

#### a.   Applicable Law

In criminal cases "which depend *entirely* upon circumstantial evidence [,] . . . the facts from which the inference of the defendant's guilt is drawn must be established with certainty – they must be inconsistent with his innocence and must exclude to a moral certainty every other reasonable hypothesis." *Floyd v. Miller*, No. 01 Civ. 2097 (JBW), 2003 WL 21845995, at *7 (E.D.N.Y. Aug. 6, 2003) (quotation marks omitted) (quoting *People v. Barnes*, 50 N.Y.2d 375, 429 N.Y.S.2d 178, 406 N.E.2d 1071, 1073 (N.Y. 1980)). However, under New York law, this standard only applies to cases dealing exclusively with circumstantial evidence. A case that includes any direct evidence, or a combination of direct and circumstantial evidence, "does not qualify for the circumstantial evidence

---

transported as per procedure in a sealed bag, then transferred to police headquarters, and finally to the medical examiner's office. (T. 39-48.)

[15] Detective Stemmle testified, with a reasonable degree of scientific certainty, that the ink impressions lifted from the vehicle matched petitioner's left and right palm. (T. 359.)

instruction." *People v. Roldan*, 88 N.Y.2d 826, 643 N.Y.S.2d 960, 666 N.E.2d 553, 554 (1996); *Norwood v. Atis*, 487 F. Supp. 2d 321, 333-34 (W.D.N.Y. 2007) ("[A]s prosecution's case rested upon both direct and circumstantial evidence, the court was not obligated to provide the requested . . . circumstantial evidence charge" (quotation marks omitted) (quoting *People v. Pagan*, 177 A.D.2d 604, 576 N.Y.S.2d 311 (N.Y. App. Div. 1991), *lv. denied*, 580 N.E.2d 769 (N.Y. 1992)).

Jury instructions violate due process if they "fail[ ] to give effect to [the] requirement" that the prosecution must prove every element of a charged offense beyond a reasonable doubt." *Middleton v. McNeil*, 541 U.S. 433, 437, 124 S.Ct. 1830, 158 L.Ed.2d 701 (2004) (per curiam). However, "a state prisoner making a claim of improper jury instructions faces a substantial burden." *Devalle v. Armstrong*, 306 F.3d 1197, 1200 (2d Cir. 2002). The petitioner must establish that "'the ailing instruction by itself so infected the entire trial that the resulting conviction violat[ed] due process,' not merely [that] 'the instruction is undesirable, erroneous, or even universally condemned.'" *Id.* at 1201 (quoting *Henderson v. Kibbe*, 431 U.S. 145, 154 (1977)); *see also Middleton*, 541 U.S. at 437 (explaining that "not every ambiguity, inconsistency, or deficiency in a jury instruction rises to the level of a due process violation").

b. Application

This Court finds that petitioner's argument that he trial court erred in not giving a circumstantial evidence charge is without merit. Although this case is based on circumstantial evidence, such as the DNA found on the cloth at the scene of the crime, the palm print matching petitioner's palm print, and the videotape of the robbery, the judge's failure to give a circumstantial evidence charge did not violate petitioner's due process rights.

There is no merit to plaintiff's claim because his case was not tried before a jury. The Supreme Court has stated that a judge acting as a fact finder in a non-jury trial presumptively follows instructions that are routinely provided to jurors. *See Harris v. Rivera*, 454 U.S. 339, 346 (1981) ("It is equally routine for [judges] to instruct juries that no adverse inference may be drawn from a defendant's failure to testify; surely we must presume that they follow their own instructions when they are acting as factfinders"). Hence, there is no requirement that the judge give himself a circumstantial evidence charge. Thus, habeas relief cannot be granted on this ground.

3. Admission of Videotape

Petitioner argues that his petition should be granted because the trial court should not have admitted the videotape into evidence. For the reasons set forth below, this Court disagrees.

a. Applicable Law

It is well-settled that "[e]rroneous evidentiary rulings do not automatically rise to the level of constitutional error sufficient to warrant issuance of a writ of habeas corpus." *Taylor v. Curry*, 708 F.2d 886, 891 (2d Cir. 1983). *See generally Estelle v. McGuire*, 502 U.S. 62, 67 (1991) ("[H]abeas corpus relief does not lie for errors of state law."). Instead, for a habeas petitioner to prevail in connection with a claim regarding an

14

evidentiary error, a petitioner must "show that the error deprived her of a *fundamentally fair* trial." *Taylor*, 708 F.2d at 891 (emphasis in original); *see also Zarvela v. Artuz*, 364 F.3d 415, 418 (2d Cir. 2004) ("Even erroneous evidentiary rulings warrant a writ of habeas corpus only where the petitioner 'can show that the error deprived [him] of a *fundamentally fair* trial.'" (emphasis in original) (quoting *Rosario v. Kuhlman*, 839 F.2d 918, 925 (2d Cir. 1988)). In other words, "[t]he introduction of improper evidence against a defendant does not amount to a violation of due process unless the evidence 'is so extremely unfair that its admission violates fundamental conceptions of justice.'" *Dunnigan v. Keane*, 137 F.3d 117, 125 (2d Cir. 1998) (quoting *Dowling v. United States*, 493 U.S. 342, 352 (1990)).

To constitute a denial of due process under this standard, the erroneously admitted evidence must have been "'sufficiently material to provide the basis for conviction or to remove a reasonable doubt that would have existed on the record without it.'" *Id.* at 125 (quoting *Johnson v. Ross*, 955 F.2d 178, 181 (2d Cir. 1992)); *see also Collins v. Scully*, 755 F.2d 16, 19 (2d Cir. 1985) (holding that evidence must be "crucial, critical, highly significant").

Moreover, the Court "must review the erroneously admitted evidence in light of the entire record before the jury." *Dunnigan*, 137 F.3d at 125 (quoting *Collins*, 755 F.2d at 19). In making this due process determination, the Court should engage in a two-part analysis, examining (1) whether the trial court's evidentiary ruling was erroneous under New York State law, and (2) whether the error amounted to the denial of the constitutional right to a fundamentally fair trial. *See Davis v. Strack*, 270 F.3d 111, 123-24 (2d Cir. 2001).

b.   Application

As noted above, petitioner argues that the videotape should not have been admitted into evidence at trial because a proper foundation for its admission into evidence was not established, there was not an appropriately established chain of custody, and defense counsel did not have an opportunity to compare the original video to the copy. (Pet. at 9.) Respondent refutes this argument by asserting that the admissibility of evidence in state court is a matter of state law, and is generally unreviewable in a federal habeas corpus proceeding. (Resp. Br. at 23.) As set forth below, the Court has reviewed petitioner's objection regarding the introduction of the videotape under the above-referenced two-part test and concludes that petitioner's claim does not warrant *habeas* relief.

As to the first part of analysis, under New York law, the decision to admit or exclude videotaped evidence that is relevant to prove or disprove a material issue rests "within a trial court's founded discretion." *People v. Patterson*, 93 N.Y.2d 80, 84 (1999). New York state law sets forth that "a videotape may be authenticated by the testimony of a witness to the recorded events or of an operator or installer or maintainer of the equipment that the videotape accurately represents the subject matter depicted," and the testimony of such a person lays a proper foundation for its admission into evidence, and a court does not abuse its discretion by admitting it. *Id*.

15

The testimony of Anthony Edelman provided a proper foundation for the admission of the videotape depicting the robbery because Mr. Edelman was the individual responsible for the installation, operation, and maintenance of the surveillance equipment at the Bethpage Federal Credit Union. (T. 75.) Mr. Edelman's testimony established that: (1) the equipment was properly working despite the time print recording being off by twelve minutes; (2) the original images were imprinted on a hard drive located in the branch of the bank where the robbery occurred; (3) the images recorded at the branch were downloaded onto a secure network hard drive, and a copy of that download image was made; (4) a copy was made from the copy of the downloaded images and provided to the Nassau County District Attorney's office (People's Trial Ex. 16); (5) the branch's hard drive could not be physically removed from the location, and therefore, could not be provided to the police; (6) the original images were erased from the branch's hard drive after the expiration of ninety days; (7) Mr. Edelman viewed the original recorded images of the robbery on the day the images were recorded; and (8) the copy that was being introduced into evidence was a "fair and accurate copy of the original hard drive recording." (T. 76-81, 89-97, 102-04, 110-111.) Accordingly, a proper foundation was laid through the testimony of Anthony Edelman, who was the operator of the equipment depicting the robbery.

In addition to Anthony Edelman's testimony, the recording was also properly authenticated through the testimony of Shannon Rice and the other witnesses to the robbery. Ms. Rice, Cania Caraballo, George Herrera, and Jennifer Paul, each viewed the video and, in sum, testified that it accurately depicted the robbery. (T. 191-93, 219-21, 238-43, 284-89.) As stated *supra*, New York State law allows such a video to be authenticated through the testimony of witnesses to the events recorded on the videotape. *See People v. Patterson*, 93 N.Y.2d at 84 (1999). The testimony of the witnesses and Anthony Edelman regarding the videotape provides a proper foundation for the videotape to have been introduced into court.

The second prong of the two-part analysis is to determine whether any alleged error in the admission of the videotape amounted to the denial of the constitutional right to a fundamentally fair trial. Even assuming the evidence regarding the introduction of the videotape was erroneous under state law, there is no basis for the Court to conclude that the admission of the videotape deprived petitioner of his constitutional right to a fair trial. The evidence of petitioner's guilt was overwhelming in this case based upon matching DNA taken from a cloth dropped by one of the robbers during the crime, a palm print matching the petitioner's palm print from the getaway vehicle, and the testimony of four tellers who were present while the robbery was occurring who gave a positive match to the petitioner's physical description. In light of the entire record, there is nothing about the admission of this evidence, even if it were erroneous, that rendered petitioner's trial unfair.

In sum, the state court's ruling allowing introduction of the videotape was not contrary to, or an unreasonable application of, clearly established federal law. Thus, petitioner's request for a writ of habeas corpus based upon the state

16

court's evidentiary ruling allowing the videotape is denied.

## IV. CONCLUSION

For the reasons set forth herein, the Court finds that the petitioner has demonstrated no basis for habeas relief under 28 U.S.C. § 2254. Therefore, the petition for a writ of habeas corpus is denied. Because petitioner has failed to make a substantial showing of a denial of a constitutional right, no certificate of appealability shall issue. *See* 28 U.S.C. § 2253(c)(2). The Clerk of the Court shall enter judgment accordingly and close this case.

SO ORDERED.

_____
JOSEPH F. BIANCO
United States District Judge

Dated:  May 3, 2012
           Central Islip, New York

\* \* \*

Petitioner is proceeding *pro se*. Respondent is represented by Andrea M. DiGregorio of the Nassau County District Attorney's Office, 262 Old Country Road, Mineola, New York, 11501.